**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
Gary Allen SORENSON,                        )
                                                          )
          Plaintiff                                  )
                                                          )
v.                                                        )
                                                          )
W. Ralph BASHAM, Commissioner,       )          Civ. No.  07-0422 (RMC)
U.S Customs and Border Protection, et al.,  )
                                                          )
          Defendants                             )
_____)

<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

The Plaintiff, Gary Allen Sorenson, by counsel, respectfully opposes the Defendants'

Motion to Dismiss ("MD") in the above-captioned case, for the reasons set forth below.

**I.     INTRODUCTION**

This Court should deny the Defendants' motion to dismiss.  The Defendants argue that

dismissal of the Plaintiff's mandamus complaint is warranted for lack of subject matter

jurisdiction and for failure to state a claim upon which relief may be granted.  MD at 5.

According to the Defendants, this Court is stripped of subject matter jurisdiction over the

Plaintiff's complaint by section 242(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"),

8 U.S.C. §1252(a)(2)(B)(ii), which divests courts of jurisdiction to review "decisions by the

government to grant or deny discretionary relief."  MD at 5.  The Defendants contend further that

the Court lacks subject matter jurisdiction because the Plaintiff lacks "a clear right to an

immediate waiver of inadmissibility," and the Defendants "owe no clear duty to adjudicate the

Plaintiff's application prior to the completion of background checks for criminal convictions and

national security matters."  MD at 9.  The Defendants also assert that the Court cannot review the

Plaintiff's mandamus complaint under the Administrative Procedure Act ("APA"), because "[t]he APA itself does not confer jurisdiction on a district court to review the decision of an administrative agency" – unless coupled with another jurisdictional basis, such as 28 U.S.C. §1331 – and the APA precludes judicial review of agency action, including a "failure to act," that is "committed to agency discretion by law."  MD at 11 (citing 5 U.S.C. §§551(13) [sic], 701(a)(2).  Finally, the Defendants maintain that the Plaintiff's claim is unripe, because "an agency must be permitted to fashion its own procedures to optimize its resources to most effectively discharge its multitude of administration responsibilities."  MD at 13.  The Plaintiff will address each of these arguments in turn.

## II.    STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1)

To overcome a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the "plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Kaur v. Chertoff*, Slip Opinion, 2007 WL 1560319, at *4 (D.D.C. May 31, 2007) (*citing Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)).  The doctrine of Rule 12(b)(1) decisions — that the plaintiff's claims must be "patently insubstantial," presenting no federal question suitable for decision — demands that the claims "be flimsier than 'doubtful or questionable'…they must be 'essentially fictitious.'"  *Best v. Kelley*, 39 F.3d 328, 330 (D.C. Cir. 1994) (*citing Hagans v. Lavine,* 415 U.S. 528, 536-538 (1973)).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied unless "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous."

B*ell v. Hood,* 327 U.S. 678, 682 (1946); *see also Piorkowski v. Parziale*, Slip Opinion, 2003 WL 21037353, at *2 (D. Conn. May 7, 2003).

Furthermore, a motion to dismiss made pursuant to Rule 12(b)(1) can be either a facial or factual challenge. Here, the government's motion to dismiss pursuant to Rule 12(b)(1) is a facial challenge because it does not dispute the facts upon which the subject matter jurisdiction depends; rather, it questions the sufficiency of the complaint. *Yu v. Brown,* 36 F. Supp. 2d 922, 927 (D.N.M. 1999) (holding that the court did have federal question jurisdiction). If the Rule 12(b)(1) motion is a facial challenge, the pleadings are taken as true for the purposes of the motion. *See Jetform Corp. v. Unisys Corp.,* 11 F. Supp. 2d 788, 789 (D. Va. 1998) (holding that if the challenge is that the complaint fails to state sufficient facts to support subject matter jurisdiction, the analysis is similar to a Rule 12(b)(6) motion, whereby the facts in the complaint are assumed to be true); *see also Kaur*, 2007 WL 1560319, at *4; *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1254 (D.C. Cir. 2005).

**B.  Fed. R. Civ. P. 12(b)(6)**

A court should not grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abigail Alliance For Better Access to Developmental Drugs v. Von Eschenback*, 445 F.3d 470, 475 (D.C. Cir. 2006) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (holding that a complaint may be dismissed under Rule 12(b)(6) "only if it is clear than no relief could be granted under any set of facts which could be proved consistent with the allegations"); *Kaur*, 2007 WL 1560319, at *5; *Song v. Klapakas*, Slip Opinion, 2007 WL 1101283, at *2 (E.D. Pa. Apr. 12, 2007); *Baker v. Director, United States Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990).

The Court must treat the complaint's factual allegations as true and must grant "the plaintiff the benefit of all reasonable inferences from the facts alleged." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006); *see also Kaur*, 2007 WL 1560319, at *5. The task of the Court in deciding on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004); *see also Saunders v. Coughlin*, No. 92-Civ.-4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need only show that a reasonable inference can be drawn from his allegations. Here, the "[e]xact amount of time that is reasonable is a fact-specific inquiry, [a determination that] is premature at [the motion to dismiss] stage." *Wu v. Chertoff*, Slip Copy, 2007 WL 1223858, at *3 (N.D. Cal. 2007) (denying government's motion to dismiss a mandamus complaint alleging unreasonable agency delay in adjudicating Plaintiff's application for immigration benefit); *see also Yu,* 36 F. Supp. 2d at 934 ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.")

## III. JURISDICTION OVER PLAINTIFF'S MANDAMUS COMPLAINT IS NOT STRIPPED BY 8 U.S.C. §1252(a)(2)(B)(ii)

The Defendants first contend that this Court lacks jurisdiction over the Plaintiff's complaint pursuant to 8 U.S.C. §1252(a)(2)(B)(ii), which strips the federal courts of jurisdiction to review a discretionary agency "decision or action." MD at 5-8. The Defendants' arguments are unpersuasive and are contrary to the overwhelming "weight of authority" on this issue, which clearly holds that the responsible government agency has "a non-discretionary duty to process or adjudicate" properly filed applications for immigration benefits, and that "that duty supports a mandamus action." *Duan v. Zamberry* , Slip Copy, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007); *see also Ma &Liu v. Gonzales*, Slip Copy, 2007 WL 1655188 (W.D. Wash. June 5, 2007); *Pool*

*v. Gonzales*, Slip Copy, 2007 WL 1613272 (D.N.J. June 1, 2007); *Ibrahim v. Chertoff*, Slip Copy, 2007 WL 1558521 (S.D. Cal. May 25, 2007); *Chen v. Heinauer*, Slip Copy, 2007 WL 1468789 (W.D. Wash. May 18, 2007); *Koren v. Chertoff*, Slip Copy, 2007 WL 1431948 (D. Conn. May 14, 2007); *Dmitriev v. Chertoff*, Slip Copy, 2007 WL 1319533 (N.D. Cal. May 4, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D. Wash. May 2, 2007); *Wu*, 2007 WL 1223858; *Song*, 2007 WL 1101283; *Mahd v. Chertoff*, Slip Copy, 2007 WL 891867 (D. Colo. Mar. 22, 2007); *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2006); *Aboushaban v. Mueller*, Slip Copy, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006); *Zahani v. Neufeld*, Slip Copy, 2006 WL 2246211 (M.D. Fla. June 26, 2006); *American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006); *Elkhatib v. Butler*, Slip Copy, 2005 WL 5226742 (S.D. Fla. June 7, 2005); *Raduga USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1149 (S.D. Cal. 2005).

The Plaintiff does not dispute that the Secretary of the U.S. Department of Homeland Security ("DHS") – and the Defendant Commissioner of U.S. Customs and Border Protection ("CBP") acting on his behalf – has discretion to grant or deny waiver applications under section 212(d)(3) of the INA, 8 U.S.C. §1182(d)(3). *See* MD at 5. However, CBP does *not* enjoy unfettered discretion to unreasonably and, as the Defendants implicitly argue, indefinitely delay adjudication of a properly filed application. The agency's discretion applies only to the decision whether to *grant* or *deny* an individual claim, not to whether the application should be adjudicated in the first place.

Contrary to the Defendants' arguments, the process of adjudicating the Plaintiff's 212(d)(3) waiver application is not a "'decision or action' . . . the 'authority for which is specified . . . to be discretionary,'" although either approval or denial of that application *would*

be such a discretionary decision or action.  MD at 5 (citing 8 U.S.C. §1252(a)(2)(B)(ii)).  Stated otherwise, CBP is not required to grant the Plaintiff's request, and the agency's ultimate decision is not subject to review by the federal courts absent constitutional infirmity.   8 U.S.C. §1252(a)(2)(B)(ii).  Such discretion over the *result*, however, cannot be stretched to permit indefinite delay in the *adjudication* of a properly filed application.  The Plaintiff is entitled to some decision in this case, because the failure to render any decision has become unreasonable as a matter of law.

Section 242(a)(2)(B) of the INA, 8 U.S.C. §1252(a)(2)(B), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13 (May 11, 2005), eliminated the authority of the federal courts to review decisions by the government to grant or deny discretionary relief, including waivers of inadmissibility under 8 U.S.C. §1182(d)(3).  Specifically, subsection (ii) of §242(a)(2)(B) provides that "no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. §1252(a)(2)(B)(ii).  Notwithstanding this jurisdiction-stripping provision, however, this Court may exercise jurisdiction in the instant case because the Plaintiff challenges only the government's failure to *adjudicate* his waiver application in the first instance.  Section 1252(a)(2)(B)(ii) does not strip federal courts of jurisdiction where – as in this case – the government has a nondiscretionary duty to act.  As was set forth in the original complaint, CBP owes the Plaintiff a duty to process and adjudicate his 212(d)(3) waiver application, and it has unreasonably failed to perform that nondiscretionary duty.  *See* Complaint ¶¶13-16, 18-22; *see also* 8 U.S.C. §1103; 8 C.F.R. §212.4(b) ("The applicant shall be notified of the decision and if the application is denied of the reasons therefore ….").

In their motion to dismiss, the Defendants attempt to blur this critical distinction – between a discretionary act of decision-making and a non-discretionary failure to adjudicate – and urge this Court to find that the jurisdiction-stripping language of 8 U.S.C. §1252(a)(2)(B)(ii) is all-encompassing, and that the agency's latitude to decide applications is unfettered. According to the Defendants, "[n]ot only does the statute vest the Attorney General [sic] with exclusive and discretionary authority to grant such waiver applications, … it also does not place any time restriction upon the Attorney General [sic] to do so."  MD at 7 (citing *Grinberg v. Swacina*, 478 F. Supp. 2d 1350 (S.D. Fla. 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006)).  However, the overwhelming majority of courts that have addressed the issue presented here – whether failure or delay in processing an application for an immigration benefit constitutes an "action" by the DHS under 8 U.S.C. §1252(a)(2)(B)(ii), thereby stripping the courts of jurisdiction to consider mandamus claims such as that brought by the Plaintiff – have rejected the government's arguments.  These courts have concluded, to the contrary, that subject matter jurisdiction *does* exist and that mandamus relief may, under certain circumstances, be appropriate.  *See, e.g.*, *Ma &Liu*, 2007 WL 1655188, at *3; *Pool*, 2007 WL 1613272, at *2; *Ibrahim*, 2007 WL 1558521, at *3; *Chen*, 2007 WL 1468789, at *3; *Koren*, 2007 WL 1431948, at *5; *Dmitriev*, 2007 WL 1319533, at *2; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3; *Mahd*, 2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067; *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *American Academy of Religion*, 463 F. Supp. 2d at 421; *Elkhatib*, 2005 WL 5226742, at *2; *Raduga USA Corp.*, 440 F. Supp. 2d at 1149.

"These courts have reasoned" – as the Plaintiff argues in this case – "that even though the actual decision to grant or deny an application … is discretionary, the USCIS has a *non-*

*discretionary duty* to act on applications *within a reasonable time*." *Pool*, 2007 WL 1613272, at *2 (emphasis added) ("[T]he obligation of the USCIS to process applications is not discretionary and is reviewable by this Court."). Consequently, the courts have time and again denied government motions to dismiss arguing a lack of jurisdiction under 8 U.S.C. §1252(a)(2)(B)(ii). *E.g.*, *Ma &Liu*, 2007 WL 1655188, at *3; *Pool*, 2007 WL 1613272, at *2; *Ibrahim*, 2007 WL 1558521, at *3; *Chen*, 2007 WL 1468789, at *3; *Koren*, 2007 WL 1431948, at *5; *Dmitriev*, 2007 WL 1319533, at *2; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3; *Mahd*, 2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067; *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2. As this line of decisions makes clear, the "weight of authority" does not support the Defendants' position.

Three recent U.S. District Court opinions are particularly instructive on this issue, explaining why, despite the jurisdiction-stripping language of INA §1252(a)(2)(B)(ii), the courts retain jurisdiction to review noncitizens' claims of unreasonable delay in adjudicating applications for immigration benefits. *See Ma &Liu*, 2007 WL 1655188; *Song*, 2007 WL 1101283; *Duan*, 2007 WL 626116.

### *Duan v. Zamberry*

In *Duan*, the U.S. District Court for the Western District of Pennsylvania denied the government's motion to dismiss a mandamus action brought by an adjustment of status applicant, who claimed that adjudication of his application had been unreasonably held up by a component of the DHS, U.S. Citizenship and Immigration Services ("CIS") – specifically, for a period of more than two years. *Duan*, 2007 WL 626116, at *1. The court rejected the government's contention that INA §1252(a)(2)(B)(ii) stripped it of jurisdiction to consider the

applicant's claim, because the subchapter within which the provision falls "specifies only that it is within the discretion of the Attorney General to adjust one's status; it does *not* address, much less specify any discretion associated with, the *pace* of application processing." *Id.* at *2 (emphasis added). Consequently, the court found §1252(a)(2)(B)(ii) "inapplicable" to the petitioner's claim of adjudicatory delay. *Id.*; *see also Alaka v. Att'y General*, 456 F.3d 88, 95 (3d Cir. 2006) ("The jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."); *Khan v. United States*, 448 F.3d 226, 232 (3d Cir. 2006) (stating that, as a general matter, there is a "strong presumption in favor of judicial review of administrative action"). Drawing a clear distinction between discretionary agency actions that are explicitly immune to review and actions which fall outside the statute's jurisdiction-stripping influence, the court explained:

> Although the speed of processing may be "discretionary" in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, *it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRIRA*.

*Id.* (emphasis added); *see also, e.g.*, *Valenzuela v. Kehl*, Slip Copy, 2006 WL 2474088, at **19-20 (N.D. Tex. Aug. 23, 2006).

In reaching its determination, the *Duan* court expressly rejected the reasoning of *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D.Va. 2006), which is relied upon by the Defendants in support of their motion to dismiss. *See* MD at 6-7, 10. According to the *Duan* court's Chief Judge, "to read the jurisdiction-stripping statute as did the *Safadi* court would render toothless all timing restraints, including those imposed by the APA[.]" *Duan*, 2007 WL 626116, at *3. Judge Ambrose declared further,

> Such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters. I will not, therefore, follow the line of reasoning represented by *Safadi*. Instead, I find that Section 1252(a)(2)(B)(ii) *does not divest this Court of jurisdiction* over the Plaintiff's claims.

*Id.* (emphasis added). A number of other district courts, from various judicial circuits, have concurred with *Duan*'s reasoning. *See, e.g.*, *Koren*, 2007 WL 1431948, at *4 ("[T]his Court is not persuaded by the *Safadi* court's reasoning. … Accordingly, this Court finds that §1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their applications … has been unreasonably delayed."); *Chen*, 2007 WL 1468789, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard*" but finds, contrary to *Safadi*, "that section 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction over plaintiff's claim."); *Huang*, 2007 WL 1302555, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard*.").

Duan* also examined, and found unpersuasive, the Texas court's decision in *Mustafa v. Pasquarell*, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006). Judge Ambrose's thoughtful analysis bears repetition in its entirety:

> *Mustafa* considered mandamus standards, rather than the jurisdiction-stripping statute at issue. *Mustafa* was based, in part, on the conclusion that because the governing statute and regulations do not impose a specific time limit, the timing of an adjudication must be considered a matter of discretion. *Alaka*[,456 F.3d at 95,] and its progeny have rendered this reasoning unpersuasive; the absence of language cannot mean the presence of discretion. The *Mustafa* court also relied on 8 C.F.R. 103.2(b)(18), which permits the withholding of adjudication. The present Defendants do not assert that they have acted pursuant to that Section. In any event, however, action under that Section would *still be subject to the reasonableness requirement imposed by the APA*.

*Duan*, 2007 WL 626116, at *2 n.2 (emphasis added) (citing *Gemini Realty, Inc. v. Gonzalez*, Slip Copy, 2006 WL 2927562 (M.D. Fla. Oct. 12, 2006)). The Chief Judge observed further,

> I note, too, that both *Safadi* and *Mustafa* involved plaintiffs, either explicitly or by the court's framing of the issue, who sought relief in the nature of immediate adjudication of an adjustment application. In *Mustafa*, the court specifically found no statutory entitlement to an immediate adjudication. In contrast, the present Plaintiff seeks an Order compelling Defendants to *immediately take all actions necessary* to adjudicate her application, rather than to immediately adjudicate the application.

*Id.* at *2 n.2 (emphasis added) (internal citations omitted).

Likewise in the case at bar. Contrary to the Defendants' contentions, the Plaintiff has not insisted upon "an immediate waiver of inadmissibility." MD at 9. Rather, he has requested only that "the Defendants and those acting under them [] immediately perform their legal duty to adjudicate the Plaintiff's application for a waiver of inadmissibility." Complaint ¶23(A). This Court has jurisdiction to review the Plaintiff's complaint.

### Song v. Klapakas

Along the same lines, in *Song* the U.S. District Court for the Eastern District of Pennsylvania found that although the actual decision to grant or deny an application is discretionary, CIS has a *non-discretionary* duty to act on applications within a reasonable time. *Song*, 2007 WL 1101283, at *3. The court thus rejected the government's contention that jurisdiction over delayed adjustment of status claims was eliminated by 8 U.S.C. §1182(a)(2)(B)(ii), holding that the statute "does not bar judicial review because USCIS has not made a decision or acted on plaintiffs' applications." *Id.* at *4. *Song* distinguished between a grant or denial of the application, over which "this court likely would not have jurisdiction," and the agency's simple "fail[ure] to do anything at all." *Id.* at *4; *see also Paunescu*, 76 F. Supp. 2d at 900 ("Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction.")

### Ma & Liu

Most recently, the U.S. District Court for the Western District of Washington denied a government motion to dismiss under analogous circumstances to the case at bar, affirmatively stating that "the Court does not find adjudication of applications for adjustment of status to be completely outside its jurisdiction." *Ma &Liu*, 2007 WL 1655188, at *3. As in *Duan* and *Song*, the court observed that, in contrast with the agency's discretionary authority to grant or deny an application, "nothing in the INA addresses, much less specifies, any discretion associated with the *pace* of adjudication." *Id.* (emphasis added); *see also Duan*, 2007 WL 626116, at *2 (holding that the "speed of processing" is "not discretionary in the manner required by the jurisdiction-stripping language of [INA §1252(a)(2)(B)(ii)]"). Furthermore, as in *Duan*, the court was "not persuaded" by the Government's reliance on *Safadi v. Howard*. *Ma &Liu*, 2007 WL 1655188, at *3.

> The *Safadi* court framed the issue as whether the term "action," as used in 8 U.S.C. §1252(a)(2)(B)(ii), encompassed the pace at which USCIS processes adjustment applications, and then held that it did. However, the court then expressly stated that its decision did *not* address the existence of jurisdiction in the case of *refusal* to process an application, or in the case where a delay was so unreasonable as to constitute a refusal. As the United States District Court for the Western District of Pennsylvania has pointed out, such a disclaimer "raises the question of how an unreasonably delay might not qualify as an 'action' … while a reasonable delay unambiguously does constitute 'action'" which "would render toothless all timing restraints[.]"

*Id.* (emphasis added) (internal citations omitted); *see also Duan*, 2007 WL 626116, at *3 ("[T]o read the jurisdiction-stripping statute as did the *Safadi* court . . . would amount to a grant of permission for inaction . . . ."). The court thus held that 8 U.S.C. §1252(a)(2)(B)(ii) clearly does not strip jurisdiction to review a noncitizen's complaint that his application has been unreasonably delayed. *Ma & Liu*, 2007 WL 1655188, at *3.

These opinions are but three recent examples of the numerous federal court decisions holding that persons who have properly filed applications for immigration benefits are entitled to adjudication of those applications within a reasonable period of time, and that the government's actions to that end are not wholly discretionary. As these cases demonstrate, with the dramatic increase in background check delays in recent years, the federal courts have witnessed a corresponding increase in mandamus litigation by noncitizens hoping to obtain a decision on their stalled applications. The government has routinely urged dismissal of such actions, insisting that the plaintiffs are seeking review of a discretionary "decision or action" over which the federal courts have no jurisdiction. The courts, however, have consistently rejected the government's arguments, refusing to find that Congress intended such a sweeping elimination of judicial review. *See, e.g.*, *Razaq v. Poulos*, Slip Copy, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007); *Haidairi*, 2006 WL 3544922, at *4 ("Plaintiffs are only asking this Court to compel Defendants to make *any* decision."); *Valenzuela*, 2006 WL 2474088; *Aboushaban*, 2006 WL 3041086, at *2; *Elkhatib*, 2005 WL 5226712, at *1-2; *Yu*, 36 F. Supp. 2d at 931-32; *Paunescu*, 76 F. Supp. 2d at 901.

As in *Duan*, *Song*, and *Ma & Liu*, these courts agree that the agency's non-discretionary duty to adjudicate a properly filed application supports a mandamus action. *Id.* Although there is, at present, no precedent in this circuit on the specific issue presented, "the majority of federal courts who have considered similar claims have found mandamus relief appropriate." *Song*, 2007 WL 1101283, at *3. [1] Furthermore, "the weight of authority holds that defendants have a

---

[1] The Plaintiff notes that this Court's recent decision in *Kaur v. Chertoff* is factually and procedurally distinguishable from the present suit. In *Kaur*, the Court granted the Government's motion to dismiss a mandamus suit because the petitioner failed even to respond to the Government's principal arguments in support of dismissal. *Kaur*, 2007 WL 1560319, at *4. Moreover, the Court determined that the petitioner was not eligible for the underlying relief he

non-discretionary duty" to process applications for immigration benefits and that "this duty

provides a jurisdictional basis for mandamus actions." *Id.* at *3 n.6; *see also Duan*, 2007 WL

626116, at *3 (and cases cited therein). The Plaintiff entreats this Court to likewise "find[] the

weight of this authority persuasive" and deny the Defendants' motion to dismiss under 8 U.S.C.

§1252(a)(2)(B)(ii). *Ma & Liu*, 2007 WL 1655188, at *4.

Were this Court to hold otherwise, it would surrender its vital judicial oversight role and

deprive countless deserving applicants – like the Plaintiff – of their sole avenue of recourse. The

---

had sought – adjustment of status to lawful permanent resident – because he had overstayed his
period of voluntary departure and was "therefore inarguably barred from receiving an adjustment
of status . . . for a period of ten years." *Id.* at *6.

The Court's decision was *not* based on the jurisdiction-stripping arguments advanced by
the Government – namely, that by enacting INA §1252(g), Congress "precluded district courts
from exercising jurisdiction over claims similar to those brought . . . on behalf of aliens,
including petitions for writs of mandamus," because such claims relate to a "decision or action . .
. to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" *Id.*
at *1, 5. To the contrary, the Court held that "[t]he petitioners have pointed to *no statutory or
regulatory provision*, nor even relevant caselaw, that would indicate that USCIS possessed a
'clearly defined' obligation" to perform the task that had been requested. *Id.* at *10 (emphasis
added). Hence, "even if there was no statutory [jurisdictional] bar to the relief that [the
petitioners are] seeking, the Court concludes that the petitioners have not otherwise demonstrated
that they are entitled to the 'extraordinary remedy' of mandamus." *Id.*

In granting dismissal of the mandamus suit in *Kaur*, the Court found that any purported
prejudice that the petitioner may have suffered as a result of agency delay in adjudicating his I-
130 petition "was thoroughly vitiated by [his] failure to comply with his voluntary departure
order and the Ninth Circuit's subsequent denial of his petition to reopen his removal
proceedings." *Id.* at *11. According to the Court,

> [T]he petitioners' opposition to the motion entirely fails to address the
> respondents' arguments regarding the Courts' alleged lack of jurisdiction under §
> 1252(g), the purportedly preclusive effect of Malhi's failure to abide by his
> voluntary departure order, and the assertedly discretionary nature of the action
> which the petitioners seek to compel.

*Id.* *4. The Court also found the petitioner ineligible for mandamus relief where he offered no
compelling reason, much less a "clear and indisputable" duty, why the agency should have
considered his earlier, more favorable I-130 petition rather than his more recent, superseding
petition. *See id.* at *9-10. The Court did not reach – because it did not have to – the question
whether the petitioner's mandamus action was jurisdictionally barred under INA §1252.

cautionary words of the U.S. District Court for the Southern District of New York are

particularly apt:

> Although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of [the APA]. Were it otherwise, the CIS could hold [such] applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely.

*Kim*, 340 F. Supp. 2d at 393; *see also American Academy of Religion*, 463 F. Supp. 2d at

421 (holding that "allowing a visa application to stagnate undecided for an indefinite

period of time … is not a permissible option"); *Raduga USA Corp.*, 440 F. Supp. 2d at

1149 ("Plaintiffs have no other means to compel the United States consul to make a

decision."). The U.S. Court of Appeals for the Third Circuit has also cautioned against

blurring the distinction between discretionary and non-discretionary agency

determinations, in order to avoid an overly broad curtailment of the courts' jurisdiction.

In *Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir. 2005), the court explained:

> We must also ask whether the action at issue here was discretionary. It is important to distinguish carefully between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status. *This distinction is central to the question of subject matter jurisdiction, and is easy to elide.*

*Pinho*, 432 F.3d at 203 (emphasis added). Warning against such broad assertions of jurisdiction-

stripping effect as have been propounded by the Defendants, the Third Circuit declared that

> such distinctions are crucial to administrative law generally; the framework of judicial review of agency action that has evolved over the past half-century is grounded in a sharp distinction between decisions committed to agency discretion, and decisions, whether "ministerial" or "purely legal," governed directly by the applicable statute or regulation.

*Id.*; *see also Sepulveda*, 407 F.3d at 63 ("[Section] 1252(a)(2)(B) does not bar judicial review of

nondiscretionary, or purely legal, decisions . . . ."). In the case at bar, there has been, to date, no

"actual exercise of discretion" by the Secretary of Homeland Security on the Plaintiff's application for a 212(d)(3) waiver, but only an unreasonable failure to adjudicate that application. Consequently, this Court's jurisdiction endures.

Finally, the Defendants insist upon a broad reading of the jurisdiction-stripping language in §1252(a)(2)(B)(ii), arguing that the agencies require extremely wide discretion to delay their adjudication while conducting expanded background and security checks, in order "to determine whether there are any criminal or security-related issues in the applicant's background that would affect his eligibility for any immigration benefits." MD at 7. However, well-established principles of statutory construction support a narrower interpretation of the statute, as counseled by the Plaintiff. *See, e.g.*, *Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005). First, there must be a showing of "'clear and convincing evidence' of a contrary legislative intent" to restrict access to judicial review. *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)). Second, there is a "strong presumption in favor of judicial review of administrative action," or, as in this case, administrative *in*action. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Third, courts construe ambiguities in deportation statutes in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *see also Obioha*, 431 F.3d at 405 (applying these principles to 8 U.S.C. § 1252(a)(2)(B)(i)); *Iddir v. INS*, 301 F.3d 492, 496-97 (7th Cir. 2002) (same). Because the language of 8 U.S.C. §1252(a)(2)(B)(ii) is "equally susceptible to a more narrow interpretation," barring review only of a decision to either grant or deny an application, but not of a decision to delay or withhold adjudication altogether, "these principles guide that the narrower reading is appropriate." *Obioha*, 431 F.3d at 405.

In sum, as the Plaintiff's complaint does not seek review of a particular action or decision by the Secretary of the DHS, but seeks simply to compel the completion of necessary processing and the adjudication of an unreasonably delayed application for a waiver of inadmissibility, the Court is not divested of its right to review by the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(ii).

## IV.    MANDAMUS JURISDICTION UNDER 28 U.S.C. §1361

The Defendants next argue that the Plaintiff's complaint should be dismissed because he lacks "a clear right to an immediate waiver of inadmissibility" or even "prompt adjudication of [his] waiver application."  MD at 9.  Once again, the Defendants' arguments are unpersuasive. Because the Plaintiff seeks only to compel the Defendants to complete necessary processing and adjudicate an application which has been unreasonably delayed, this Court has original jurisdiction under the mandamus statute, 28 U.S.C. §1361.  Contrary to the Defendants' claims, the Plaintiff has established that he has a clear right to the relief requested, and that the agency has a clear duty to act.

Adjudication of the Plaintiff's 212(d)(3) waiver application, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Defendants are under obligation to perform in a timely manner.  *See* 8 U.S.C. §1103; 8 C.F.R. §212.4(b).  As one court has recently explained,

> The Defendants … have a nondiscretionary duty to process Liu's application; they cannot decide not to process an application.  Such a decision would not be an exercise of discretion, but a refusal to perform assigned duties.  *This Court has jurisdiction to review whether the Defendants are refusing to act.*

*Liu v. Chertoff*, Slip Copy, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007) (emphasis added) (denying government's motion to dismiss plaintiff's mandamus suit and finding two year delay in completing plaintiff's FBI name check to be "highly unusual"); *Raduga USA Corp.*, 440 F.

Supp. 2d at 1149 (issuing writ of mandamus to compel a final decision on plaintiffs' visa applications because "Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed"); *see also, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2 ("[T]he obligation of the USCIS to process applications is not discretionary and is reviewable by this Court."); *Ibrahim*, 2007 WL 1558521, at *5 ([T]he duty to adjudicate the applications is nondiscretionary and ministerial."); *Chen*, 2007 WL 1468789, at *4 ([T]his non-discretionary duty to adjudicate an adjustment application supports a mandamus action."); *Koren*, 2007 WL 1431948, at *7 ("Since CIS' obligation to *adjudicate* adjustment of status applications is clearly prescribed, the failure to do so within a 'reasonable' period of time triggers mandamus jurisdiction in federal court."); *Dmitriev*, 2007 WL 1319533, at *3; *Huang*, 2007 WL 1302555, at *4; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *3; *Duan*, 2007 WL 626116, at *3; *Mahd*, 2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067 ("[P]etitioners whose applications … are properly before the INS … have a right, enforceable through a writ of mandamus, to have the applications processed within a reasonable time.") (internal citations omitted); *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2 ("[A]dministrative agencies do not possess discretion to avoid discharging the duties that Congress intended them to perform."). As the Plaintiff has asserted, the delay of more than 16 months to adjudicate his waiver application is per se unreasonable. *See* Complaint ¶22. The Plaintiff has fully complied with all the requirements for seeking a waiver under 8 U.S.C. §1182(d)(3), including making numerous inquiries with CBP and the FBI into the unexplained delays in reaching a decision on his application. *See* Complaint ¶¶15-16.

The district court's opinion in *Wu v. Chertoff* provides valuable guidance on this point. In *Wu*, the U.S. District Court for the Northern District of California considered a case presenting comparable facts to the case at bar. *Wu*, 2007 WL 1223858. Like Mr. Sorenson, the plaintiff in *Wu* sought mandamus relief to expedite the processing of her FBI name check, in connection with an application for adjustment of status. *Id.* at *1. The government moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that the court lacked jurisdiction because the Defendant agency had "no clear, ministerial duty to act within a particular time frame." *Id.* at *2. The court rejected this argument, finding that jurisdiction exists under both the mandamus statute and the APA. *Id.* at *3 (identifying a "clear and certain right" to have immigration applications adjudicated within a reasonable time); *see also Singh*, 470 F. Supp. 2d at 1068; *Gelfer*, 2007 WL 902382; *Aboushaban*, 2006 WL 3041086; *Song*, 2007 WL 1101283. Furthermore, the court discerned "nothing to compel the conclusion that three years was a 'reasonable time' as a matter of law" for the plaintiff's name check and adjustment application to have been delayed, and thus denied the government's motion to dismiss. *Wu*, 2007 WL 1223858, at *3-4 ("Relief under mandamus and the APA are virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty.").

Similarly, in *Song*, the district court rebuffed the government's efforts to dismiss the plaintiff's suit, holding that the agency has "a non-discretionary duty to process adjustment applications and that this duty provides a jurisdictional basis for mandamus actions." *Song*, 2007 WL 1101283, at *3 n.4; *see also Duan*, 2007 WL 626116, at *3 (and cases cited therein). *Song* noted that even though the actual decision to grant or deny an application is discretionary, the agency "has a *non-discretionary* duty to act on applications within a reasonable time." *Song*, 2007 WL 1101283, at *3 (emphasis added). In addition, in *Ma & Liu*, having rejected the

government's jurisdictional arguments under 8 U.S.C. §1252(a)(2)(B)(ii), the court proceeded to find that the mandamus statute provides affirmative jurisdiction in suits such as that brought by the Plaintiff. "[T]his Court finds that plaintiffs have a right to the adjudication of their adjustment applications and defendants' actions in that respect are not wholly discretionary." *Id.* at *4. Furthermore, "[t]his non-discretionary duty … supports a mandamus action." *Id.*; *see also, e.g.*, *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3 ("The weight of authority . . . supports a finding that Defendants have a non-discretionary duty to process or adjudicate an adjustment application; that duty supports a mandamus action."); *Haidairi*, 2006 WL 3544922, at *6 ("A writ of mandamus confers upon the Court the power to compel the Defendants to perform the duty they owe Plaintiffs.").

This Court should follow the well-reasoned opinions of the numerous district courts that have asserted jurisdiction over similar mandamus suits and should accordingly deny the Defendants' motion to dismiss.

## V.    JURISDICTION UNDER THE APA

The Defendants argue further that the Plaintiff's allegations of unreasonable delay in the adjudication of his 212(d)(3) waiver application are unreviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. §§555(b), 702, because (1) such adjudications are "committed to agency discretion by law," and (2) there is "no time frame for when such an application must be adjudicated" and hence "no standard" against which this Court can measure whether the agency's delay has been "unreasonable." MD at 11, 12. The Defendants' arguments are both unavailing and contrary to the overwhelming weight of authority.

At the outset, the Defendants' assertion that the APA "precludes review of the agency's adjudicative process," MD at 13, is belied by this Court's explicit assertions of APA jurisdiction

over nearly identical mandamus claims.  For example, in the context of a similar mandamus action brought by an employer on behalf of non-citizen workers under 28 U.S.C. §1361, the Court held that it "clearly has jurisdiction to review a claim of unreasonable delay of agency action" under the APA.  *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005).  Echoing the Plaintiff's complaint in this case, *Liberty Fund* explained that "[t]he Administrative Procedure Act requires an agency to act 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action … unreasonably delayed,' 5 U.S.C. § 706(1)."  *Id.* at 114; *see also* Complaint ¶28.  According to the Court, where a plaintiff "ha[s], in fact, demonstrated unreasonable delay," he has thereby established "a 'clear right' to relief under the Mandamus Act."  *Liberty Fund*, 394 F. Supp. 2d at 114.

### A.     The APA Requires Defendants to Act "Within a Reasonable Time"

Contrary to the Defendant's claims, the government is obligated under the APA to carry out its duties – including the adjudication of properly filed applications for waivers of inadmissibility – within a reasonable time.   Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it."   5 U.S.C. § 555(b) (emphasis added).  Resort to the APA is appropriate where, as here, no specific time frame for completion of agency action is mandated by the relevant statute.  *See, e.g.*, *American Academy of Religion*, 463 F. Supp. 2d at 420 ("Where the agency in charge of the adjudication fails to render a decision within a reasonable period of time, as required by § 555(b) [of the APA], the Court has the power to grant a writ of mandamus compelling an adjudication."); *Raduga USA Corp.*, 440 F. Supp. 2d at 1149 (granting request to issue writ of mandamus to compel final decision on plaintiff's visa application, notwithstanding Government's assurances that decision was

"forthcoming"); *see also, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4 ("[T]his Court agrees that jurisdiction is proper under the APA and 28 U.S.C. §1331 to compel USCIS to adjudicate an application for adjustment to permanent status."); *Pool*, 2007 WL 1613272, at *2 (same); *Koren*, 2007 WL 1431948, at *6 (same); *Dmitriev*, 2007 WL 1319533, at *3 (finding that "the USCIS has a statutory duty to adjudicate I-485 applications within a reasonable time" under the APA); *Huang*, 2007 WL 1302555, at *3 (same); *Wu*, 2007 WL 1223858, at *2-3 ("This Court has jurisdiction to hear plaintiff's complaint under both the writ of mandamus and the APA."); *Song*, 2007 WL 1101283, at *4 (finding that jurisdiction exists under the APA "because while the agency has discretion to determine the outcome of an adjustment application, they do not have discretion concerning the timing of processing applications"); *Duan*, 2007 WL 626116, at *4 ("I am persuaded by those courts that have found the exercise of jurisdiction proper, and 'this court now joins the majority and holds that jurisdiction is proper under the APA and 28 U.S.C. §1331 to compel the INS to adjudicate an application for adjustment to permanent status.'") (internal citations omitted); *Singh*, 470 F. Supp. 2d at 1072 ("[T]he Court concludes that, whether pursuant to mandamus or the APA, Mr. Singh is entitled to the relief he seeks."); *Fu v. Reno*, Slip Copy, 2000 WL 1644490, at *6 (N.D. Tex. Nov. 1, 2000) ("[T]he court has subject matter jurisdiction over this case pursuant to the APA in conjunction with 28 U.S.C. §1331."); *Yu*, 36 F. Supp. 2d at 932; *Agbemaple v. INS*, Slip Copy, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *see also Gelfer*, 2007 WL 90382, at *3 ("Relief under mandamus and the APA are virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty."); c*f., e.g.*, *Danilov*, 370 F. Supp. 2d at 445 (finding the APA inapplicable because "this matter is controlled by the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b)," which sets forth a specific 120-day deadline for completion of agency action).

Furthermore, timely adjudication of discretionary decisions is a fundamental requirement of the APA and is distinct from non-reviewability of actions "committed to agency discretion by law," pursuant to 5 U.S.C. § 701(a)(2). The former principle permits the courts to intervene to determine *when* a case should be decided, whereas the latter principle bars review of *how* a case is to be decided. As one district court has explained, in the context of an application for a non-immigrant visa, mandamus jurisdiction arises where an agency fails or refuses to adjudicate the application for an unreasonably long period of time:

> The Government is correct that its decision to grant or deny Ramadan a visa is sufficiently discretionary to lie beyond the scope of mandamus. But the wide latitude given the Executive to grant or deny a visa application … does not include the authority to *refuse to adjudicate* a visa application. … Since the Government's obligation to adjudicate visa application is clearly prescribed, failure to issue or refuse a visa *within a reasonable period of time* triggers mandamus jurisdiction in federal court.

*American Academy of Religion*, 463 F. Supp. 2d at 421 (emphasis added); *see also Raduga USA Corp.*, 440 F. Supp. 2d at 1149 ("Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. … The Court finds the consul's four year delay unreasonable and therefore issues a writ of mandamus directing the consul to render a final decision[.]"). A court generally will not order the government to exercise its discretion in any particular manner. *See id.*; *see also, e.g.*, *Silveyra v. Moschorak*, 989 F.2d 1012, 1015 (9th Cir. 1993) (stating that, in general, "mandamus may not be used to instruct an official *how* to exercise discretion") (emphasis added). However, the courts *are* empowered to order the government to take *some* action. *See, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2; *Koren*, 2007 WL 1431948, at *6; *Dmitriev*, 2007 WL 1319533, at *3; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *4; *Singh*, 470 F. Supp. 2d at 1072; *American Academy of Religion*, 463 F. Supp.

2d at 421; *Fu*, 2000 WL 1644490, at *6; *Yu*, 36 F. Supp. 2d at 932; *Agbemaple*, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *Gelfer*, 2007 WL 90382, at *3.

      In similar cases where an applicant for an immigration benefit has brought a mandamus suit to compel agency action on a stalled application, the federal courts have exercised jurisdiction under the APA and found lesser delays by the government to be unreasonable. *See, e.g.*, *American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (finding nine month delay in adjudicating a visa application "not typical" and well beyond what is "reasonable"); *Kim*, 340 F. Supp. 2d 384 (noting that section 555(b) of the APA requires the government to act within a reasonable amount of time); *see also Ma & Liu*, 2007 WL 1655188, at *5 (stating that, even in the absence of any statutory or regulatory timeline, "federal courts routinely assess the 'reasonableness' of the pace of agency action under the APA"); *Song*, 2007 WL 1101283, at *4-5 (same); *Duan*, 2007 WL 626116, at *4 (same).

      In *American Academy of Religion v. Chertoff*, the district court exercised mandamus jurisdiction over the plaintiffs' complaint that the Department of State had failed to act on a properly filed non-immigrant visa application for an unreasonably long time. 463 F. Supp. 2d at 420-21. The court acknowledged that a "determination of what constitutes a 'reasonable period of time' varies according to the circumstances of each particular case." *Id.* at 421. To make that assessment, the court looked to the State Department's "own website [which] indicates that most nonimmigrant visas submitted to the Bern Embassy are processed within 2 days of application," whereas "'most special clearances are resolved within 30 days of application." *Id.* By contrast, the plaintiff Mr. Ramadan had waited more than nine months for a decision. *Id.* The court concluded that the State Department's own estimated timeframes "suggest that Ramadan's nine-month wait is well beyond what is 'reasonable.'" *Id.* Furthermore, although the record in the

case was voluminous and the plaintiff had been asked to provide extensive evidence in support of his application, the court held that "there has been more than enough time to review these materials and come to a reasoned conclusion on Ramadan's admissibility." *Id.* at 422. The evidence of record, the court found, was "more than adequate" to make a decision. *Id.* Equally so in the case at bar.

In another case, *Kim v. Ashcroft*, the district court considered an alien's claim that a 42-month delay by the INS in adjudicating his adjustment of status application was unreasonable and in violation of the APA. *Kim*, 340 F. Supp. 2d at 386. The government filed a motion to dismiss the suit for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted, which the court denied "in its entirety," finding that "subject matter jurisdiction exists pursuant to the APA in conjunction with the federal question statute." *Id.* at 386, 388. According to the district court,

> Defendants' arguments fail for several reasons. *First*, defendants correctly note that the decision of whether to grant or deny an adjustment application is wholly discretionary. However, Kim is not requesting judicial review of an adverse adjudication rendered by defendants; nor is he seeking to compel them to grant his petition. Rather, he is asking this Court to compel defendants to make *any* decision. Whether to *adjudicate* an adjustment application is not discretionary, but governed by section 6 of the APA, requiring the CIS to take action on a matter presented to it "within a reasonable time."

*Id.* at 389. The court stated further,

> [A]lthough there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. *This result is explicitly foreclosed by the APA*.

*Id.* at 393 (emphasis added).

Likewise, the court in *Song* determined that jurisdiction exists under the APA because although the agency has discretion to determine the *outcome* of a particular application, it does not have discretion over the *timing* of application processing: "USCIS simply does not possess unfettered discretion to relegate an alien to a state of limbo, leaving them there to languish indefinitely." *Song*, 2007 WL 1101283, at *4 (quoting *Haidari*, 2006 WL 3544922, at *6). Such unreasonable delay is "explicitly foreclosed" by the APA. *Id.*; *see also American Academy of Religion*, 463 F. Supp. 2d at 421 ("Read together, [the] regulations make clear that allowing a visa application to stagnate undecided for an indefinite period of time, as the Government appears to be doing in this case, is not a permissible option."); *Raduga USA Corp.*, 440 F. Supp. 2d at 1149.

*Ma & Liu* also found that jurisdiction exists under the APA and 28 U.S.C. §1331, rejecting the government's argument that neither the statute nor the regulations provide a "meaningful standard" against which to measure the agency's adjudicatory process. *Ma & Liu*, 2007 WL 1655188, at *4. "As federal courts routinely assess the 'reasonableness' of the pace of agency action under the APA, this Court believes there is a meaningful standard against which to judge defendants' action, or lack thereof." *Id.* at *5 (citing *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998)). Accordingly, the court ruled that jurisdiction exists "to *compel* USCIS to adjudicate an application for adjustment to permanent resident status." *Id.* (emphasis added).

Finally, in a suit finding APA jurisdiction to review an agency determination regarding an alien's statutory eligibility for adjustment of status to permanent resident, the Third Circuit has declared that "[a] litigant has a right to a prompt resolution of decisions concerning his status

affording him the opportunity to make personal, educational, or career plans." *Pinho*, 432 F.3d at 201-02 (citing *Chen v. Reno*, 1997 WL 316482, at *2 (S.D.N.Y. 1997)).

In the case at bar, the Plaintiff has complied fully with all requirements imposed on him and performed what should have been more than necessary to obtain a waiver of inadmissibility under 8 U.S.C. §1182(d)(3), including submitting a completed Form I-192 along with supporting evidence, paying the $265 application fee, and responding to CBP's request for additional information. *See* Complaint ¶¶13-14; MD at 1-2; McCabe Decl. ¶¶17-21. In response, the Defendants have engaged in unreasonable inaction and delay, failing to adjudicate his waiver application despite the Plaintiff's repeated inquiries. *See* Complaint ¶¶15-16. Under these circumstances, the Court should find – like the majority of federal courts to have addressed this issue – that the Defendants' failure to adjudicate the Plaintiff's application is unreasonable and a breach of its ministerial non-discretionary duty. *See, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2; *Koren*, 2007 WL 1431948, at *6; *Dmitriev*, 2007 WL 1319533, at *3; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *4; *Singh*, 470 F. Supp. 2d at 1072; *Fu*, 2000 WL 1644490, at *6; *American Academy of Religion*, 463 F. Supp. 2d at 421; *Yu*, 36 F. Supp. 2d at 932; *Raduga USA Corp.*, 440 F. Supp. 2d at 1149; *Agbemaple*, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *Gelfer*, 2007 WL 90382, at *3.

**B.    The Court May Determine What is "Reasonable" Under the APA in the Absence of a Statutory Timeframe for Adjudication**

The Defendants also contend that the APA affords this Court no jurisdiction to review the Plaintiff's mandamus complaint, because "no statutory or regulatory provisions provide a 'meaningful standard' against which to measure the Attorney General's process of adjudicating such an application" and thus "no standard against which the Court can measure whether the

Agency has acted 'within a reasonable time,' 5 U.S.C. §555(b), or 'unreasonably delayed' adjudication." MD at 12 (citing 5 U.S.C. §706(1)). The Defendants are mistaken.

Although neither the statute nor the regulations provide a specific timeframe for adjudication of waiver applications under 8 U.S.C. §1182(d)(3), this does not render the pace of application processing discretionary; there is an implied commitment under the statute to adjudicate meritorious claims within a reasonable period of time. *See, e.g.*, *Ibrahim*, 2007 WL 1558521, at *5 (observing that "the duty to adjudicate the applications is nondiscretionary and ministerial" and "the statute implies that this duty must be carried out within a reasonable time"); *see also American Academy of Religion*, 463 F. Supp. 2d at 421 (stating that "allowing a visa application to stagnate undecided for an indefinite period of time … is not a permissible option"); *Elmalky v. Upchurch*, Slip Copy, 2007 WL 944330, at *5 (N.D. Tex. Mar. 28, 2007) ("[T]he USCIS has a *nondiscretionary* duty to issue *some* decision . . . within a reasonable time.") (emphasis in original); *Lazli v. USCIS*, Slip Copy, 2007 WL 496351, at *4 (D. Or. Feb. 12, 2007) (finding an implied duty to adjudicate within a reasonable time).

Moreover, CBP's own estimated processing times plainly afford a "meaningful standard" against which this Court can assess the reasonableness of agency delay. *See, e.g.*, *Ibrahim*, 2007 WL 1558521, at *7 (noting that "[w]hile Congress has not imposed a timetable for application processing, the CIS has established one" in the form of its published case processing times). In this case, the CBP's Port of Champlain – which adjudicates waiver applications filed, as in this case, at the Rainbow Bridge under jurisdiction of the Buffalo Field Office – reports that results of FBI name checks "are sometimes received within a few weeks, however, they are just as likely to take several months, and in some cases, well over a year." McCabe Decl. ¶15. The Plaintiff's 212(d)(3) waiver application, along with all requested additional supporting evidence,

has been pending with CBP since May 8, 2006. Id. ¶21. In response to an inquiry by the Plaintiff's counsel on June 7, 2007, CBP stated that the estimated processing time for such waiver applications is "approximately six to eight months." McGaughey Decl. ¶3 (attached hereto). Clearly, the Plaintiff's waiver application is now well beyond the estimated timeframe for adjudication, according to the agency's own standards. CBP's estimated processing times provide a "meaningful standard" against which this Court may assess the reasonableness of agency delay. *See, e.g., American Academy of Religion*, 463 F. Supp. 2d at 421 (finding that agency's own estimated processing times "suggest that Ramadan's nine-month wait is well beyond what is 'reasonable'"); *Wu*, 2007 WL 1223858, at *3 (holding that "[t]he amount of time that is reasonable [for agency processing of an immigration application] is a fact-specific inquiry" and finding "nothing to compel the conclusion that three years is a 'reasonable time' as a matter of law"); *Gelfer*, 2007 WL 902382, *2 ("Allowing the respondents a limitless amount of time to adjudicate petitioner's application would be contrary to the 'reasonable time' frame mandated under [the APA]."); *Yu*, 36 F. Supp. 2d at 934 ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.").

## VI.    PLAINTIFF'S CLAIM IS RIPE FOR REVIEW BY THIS COURT

The Defendants maintain that even if this Court has jurisdiction to consider the Plaintiff's mandamus action, the claim is unripe because "Defendants have not completed Plaintiff's security screening process" and "like thousands of other applicants in his company, [Plaintiff] must exercise patience while the national security screening process is completed." MD at 14. The Defendants' argument is tautological, suggesting that the claim will only be ripe for judicial

review *after* the agencies have completed their screening and CBP has adjudicated the Plaintiff's application. Such distorted reasoning cannot prevail.

In his mandamus complaint, the Plaintiff stated that he filed his 212(d)(3) waiver application on November 16, 2005, and he subsequently provided all requested additional documentation on May 8, 2006. Complaint ¶¶13-14. In its motion to dismiss, the Defendants acknowledge that CBP submitted the initial request for FBI name checks on February 16, 2006. McCabe Decl. ¶22. Moreover, the name check request was resubmitted for a second time on March 9, 2006, for a third time on October 26, 2006, and for a fourth time on April 30, 2007. *Id.* Therefore, it is undisputed that the Plaintiff's FBI name check has now been pending for over 16 months. The Defendants have presented no evidence that the Plaintiff contributed to this delay by failing to pay the required application fee or refusing to provide all requested evidence and information, or that there exist higher priorities necessitating the languorous process in his case. The Defendants do not state whether CBP, at any point, has requested that the FBI expedite the name check process in the Plaintiff's case – and if not, why not. According to the Defendants, they simply "have not completed Plaintiff's security screening process, due in part to the sheer volume of pending name check applications." MD at 14 (citing Cannon Decl. ¶¶13-20).

The federal courts have found similar, and even lesser, agency delays to be "unreasonable" and have thus denied government efforts to dismiss the applicants' mandamus suits. *See, e.g.*, *Liu*, 2007 WL 1202961, at *2 (finding two year delay in completing adjustment applicant's FBI name check to be "highly unusual"); *American Academy of Religion*, 463 F. Supp. 2d at 421 (finding nine month delay in deciding applicant's non-immigrant visa request to be "well beyond what is 'reasonable'"); *Singh*, 470 F. Supp. 2d at 1067 (denying government's motion to dismiss where marriage-based adjustment application pending for nearly four years);

*Elkhatib*, 2005 WL 5226742, at *2 (granting mandamus complaint because "four years is an unreasonable length of time for Petitioner's Application to remain pending"); *Razik*, 2003 WL 2187826, at *2-3 (denying motion to dismiss and noting that plaintiffs' applications had "languished for two years and yet INS has done nothing"); *Paunescu*, 76 F. Supp. 2d at 902-03 (finding government "misfeasance" and concluding that plaintiffs were "victims of a bureaucratic nightmare" where applications remained pending for two years); *Yu*, 36 F. Supp. 2d at 935 (denying motion to dismiss where application pending for 2 ½ years).

In light of this compelling authority, the Court should find that the agency's delay is unreasonable and should remand the Plaintiff's case to CBP with instructions to take all necessary steps to complete adjudication of his 212(d)(3) waiver application – including expediting the FBI name check, if necessary – as expeditiously as possible. *See Ibrahim*, 2007 WL 1558521, at *7 (noting that "delays in the immigration arena affect human health and welfare, and are therefore less tolerable than those that implicate only economic interests"); *Singh*, 470 F. Supp. 2d at 1067 (denying government's motion to dismiss and ordering agency to complete adjudication of plaintiff's application, which "has been pending for almost four years," where "Mr. Singh's inability to obtain permanent resident status affects a wide range of important rights," including ability to travel and to petition for family members).

Alternatively, an assessment of whether the agency's delay is "unreasonable," given the particular circumstances of the Plaintiff's case, is a question of fact that must be decided by the Court in merits proceedings on the underlying mandamus complaint, rather than on a motion to dismiss. It would be premature, at this stage of the proceedings, to grant the Defendants' request to dismiss the Plaintiff's complaint. *See, e.g.*, *Gelfer*, 2007 WL 902382, at *2 ("On this motion to dismiss, it is premature to determine whether the delay was actually unreasonable under the

circumstances.  If the delay is found to be unreasonable after a full consideration of the surrounding facts, the Court will then have a duty to 'compel' respondents to adjudicate the application by a deadline certain."); *Koren*, 2007 WL 1431948, at *7 ("Because there is insufficient information on which to base a determination at this time, the court cannot say that Plaintiffs will be unable to prove any set of facts which would entitle them to relief."); *Liu*, 2007 WL 1202961, at *3 (finding question regarding how long an FBI name check should take, and whether timing in plaintiff's case indicates a failure to act by CIS, to be an issue of fact that is not subject to dismissal or summary judgment); *Agbemaple*, 1998 WL 292441, at *2 ("Because it is possible that Agbemaple could demonstrate that the delay has in fact been unreasonable, dismissal is inappropriate.").

Furthermore, the specific facts of the Plaintiff's case suggest that he is not simply "waiting in line" to have his waiver application duly adjudicated, but apparently has been "lost in a bureaucratic shuffle," whereby his multiple inquiries to CBP and the FBI have fallen on deaf administrative ears and the now 16-month delay in adjudication has only continued to grow. *Pool*, 2007 WL 1613273, at *3; *see also* Complaint ¶¶15-16.  Under analogous circumstances, the courts have held that the agency "must either adjudicate [the Plaintiff's application] or provide a satisfactory explanation for the delay."  *Pool*, 2007 WL 1613273, at *3.  Dismissal of the Plaintiff's complaint is not appropriate, as the agency has failed to demonstrate a good faith effort to resolve administrative errors and adjudicate the Plaintiff's application within a reasonable timeframe, which clearly weighs in favor of mandamus relief.  *See, e.g.*, *Gelfer*, 2007 WL 902382, at *2; *Liu*, 2007 WL 1202961, at *3; *Agbemaple*, 1998 WL 292441, at *2; c*f. Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005) (holding that "the good faith of the agency in addressing the delay weighs against mandamus").

Accordingly, the Plaintiff urges this Court to find, notwithstanding the Defendants' protestations, that the facts clearly support his claim of unreasonable agency delay. The Court should order the Defendants and those acting under them to perform their non-discretionary legal duty and take all appropriate steps to adjudicate the Plaintiff's meritorious 212(d)(3) waiver application without further delay.

## VII.    DEFENDANTS IDENTIFY NO AUTHORITY REQUIRING THEM TO CONDUCT SECURITY AND BACKGROUND CHECKS

Finally, the Defendants assert that the Plaintiff, "like thousands of other applicants in his company, must exercise patience while the national security screening process is completed." MD at 14. According to the Defendants,

> As part of the application adjudication process, several record are run through various databases with regard to the applicant. The checks include a Federal Bureau of Investigation (FBI) name check, FBI fingerprint check, and the Department of Homeland Security-managed Interagency Border Inspection System (IBIS). Additional checks may also be run through other federal, state, or local agencies if such checks are deemed appropriate and/or necessary with regard to a particular applicant.

McCabe Decl. ¶10; *see also* Olszak Decl. ¶¶6-8; Cannon Decl. ¶4, 17. However, the Defendants point to no authority that requires them to conduct the specified security and background checks, or to correspondingly delay adjudication of the Plaintiff's application for a waiver of inadmissibility. *See id.* The Defendants cite to only two sources of authority for the described checks – 8 C.F.R. §103.2(b)(7) and 8 U.S.C. §1105(a) – and neither of these provisions states that such checks must be conducted and completed before a waiver application can be adjudicated. MD at 7, 8.

The cited regulatory provision, under the heading "Applications, Petitions, and Other Documents," provides as follows:

Testimony.  The Service may require the taking of testimony, and may direct any necessary investigation.  When a statement is taken from and signed by a person, he or she shall, upon request, be given a copy without fee.  Any allegations made subsequent to filing an application or petition which are in addition to, or in substitution for, those originally made, shall be filed in the same manner as the original application, petition, or document, and acknowledged under oath thereon.

8 C.F.R. §103.2(b)(7).  The cited statutory provision, in turn, states the following:

The Commissioner and the Administrator shall have authority to maintain direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this Act in the interest of the internal and border security of the United States.  The Commissioner and the Administrator shall maintain direct and continuous liaison with each other with a view to a coordinated, uniform, and efficient administration of this Act, and all other immigration and nationality laws.

8 U.S.C. §1105(a).  In the absence of any statutory or regulatory mandate to conduct the described security and background checks, the Defendants' failure to adjudicate the Plaintiff's application on that basis is improper and is *ultra vires* to the INA and its implementing regulations.  *See, e.g.*, *Succar v. Ashcroft*, 394 F.3d 8, 36 (1st Cir. 2005) (stating, in the adjustment of status context, that "Congress did not . . . give the Attorney General unfettered discretion to [act] in disregard of the statutory scheme"); *Truckers United for Safety v. Mead*, 251 F.3d 183, 190 (D.C. Cir. 2001) (holding that because U.S. Department of Transportation Inspector General acted outside his statutory authority in conducting investigations of motor carriers' compliance with safety regulations, his actions "were *ultra vires*, causing injury to appellants for which they are entitled to relief"); *see also Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005).

The Defendants have identified no authority requiring that a qualified applicant for a waiver of inadmissibility undergo background or security checks before CBP will adjudicate his application.  Moreover, the Defendants have pointed to no authority for withholding or delaying

action on a waiver application pending completion or review of background and security checks. The Defendants also have not indicated that any request has been made to the FBI to expedite the Plaintiff's background name check.  *See* McCabe Decl. ¶22; Olszak Decl. ¶¶9-15; Cannon Decl. ¶22.  Accordingly, the Defendants' actions in this regard are *ultra vires* and the delay in adjudication is unjustified.

## VIII.  CONCLUSION

Based on the foregoing, the Plaintiff respectfully opposes the Defendants' motion to dismiss and urges this Court to deny the motion in its entirety.  Furthermore, the Plaintiff urges the Court to remand the Plaintiff's application for a waiver of inadmissibility (Form I-192) under 8 U.S.C. §1182(d)(3) to CBP, with instructions that all appropriate steps must be taken to adjudicate the Plaintiff's application within 30 days, including expediting the Plaintiff's background checks with the FBI.  *See Song*, 2007 WL 1101283, at *5 (denying government motion to dismiss and remanding to the agency "to complete adjudication of plaintiffs applications within thirty days"); *Haidari*, 2006 WL 3544922, at *6 (denying motion to dismiss and remanding to CIS to complete processing of plaintiffs' adjustment applications within 30 days); *see also Ibrahim*, 2007 WL 1558521, at *7-8 (ordering government defendants to "forthwith complete the adjudication" of petitioner's pending application).


Respectfully submitted this 19th day of June 2007,

GARY ALLEN SORENSON

*By counsel,*


_____/s/_____
Thomas K. Ragland
DC Bar Number: 501021

MAGGIO & KATTAR
11 Dupont Circle, NW, Suite 775
Washington, DC 20036
Phone:  (202) 483-0053
Fax:  (202) 483-6801
tragland@maggio-kattar.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                   )
**Gary Allen SORENSON,**                           )
                                                   )
        **Plaintiff**                              )
                                                   )
**v.**                                             )
                                                   )
**W. Ralph BASHAM, Commissioner,**                 )        **Civ. No.  07-0422 (RMC)**
**U.S Customs and Border Protection, et al.,**     )
                                                   )
        **Defendants**                             )
_____)

### <u>ORDER</u>

Upon consideration of the Opposition to Defendants' Motion to Dismiss it is hereby

ORDERED that said Motion is hereby DENIED;

              DONE AND ORDERED this _____day of June 2007,

                        _____
                        Rosemary M. Collyer
                        United States District Judge
                        United States District Court for the District of Columbia

## CERTIFICATE OF SERVICE

I, Thomas K. Ragland, do hereby certify that on this 19th day of June 2007, a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss was filed electronically and thereby served upon:

> Shearease Louis
> Special Assistant United States Attorney
> United States Attorney's Office
> Civil Division
> 555 4th Street, N.W.
> Washington, DC  20530
> (202) 307-0895

_____/s /_____

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW
Suite 775
Washington, DC 20036

Phone: 202-483-0053
Fax:    202-483-6801

CIV. NO. 07-0422 RMC

<u>McGAUGHEY DECLARATION</u>

I, Erin McGaughey, do hereby swear under penalty of perjury that the following is true and accurate:

1. I am a summer law clerk at Maggio & Kattar, PC, 11 Dupont Circle, N.W., Suite 775, Washington, D.C. 20036.

2. On June 7, 2007, I spoke with Officer Albee, a Customs and Border Protection Officer at the Rainbow Bridge Port of Entry, phone number: (716) 284-5174, extension 325.

3. Officer Albee informed me that the estimated time for adjudication of a Form I-192 waiver of inadmissibility is approximately six to eight months.

Signed,

_____          06/07/07
Erin McGaughey                   _____
                                 Date

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this 7 day of June , 2007
_____
Notary Public, D.C.
My commission expires 2/28/2010

Amal A. Talhame
Notary Public, District of Columbia
My Commission Expires 2-28-2010